CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent, vs. NEW DELLS LUMBER COMPANY, Appellant.

*February 15—March 11, 1924.*

*Carriers: Damages: Inability of consignee to unload cars at customary place: Duty to designate other points for spotting cars: Constructive placement.*

1. The fact that a carrier, on learning that loaded cars were occupying a portion of defendant's spur track upon which prior shipments had been unloaded and were being used for ballast purposes during a flood, did not offer to place the incoming cars upon other parts of the spur track where unloading would have been possible, is not sufficient to prevent demurrage, where defendant was promptly informed that the carrier considered defendant's use of the spur track as inability to receive new shipments. p. 312.

2. In such case, a notice by the carrier of the arrival of other cars and of its inability to deliver them because of inability on the part of the defendant to receive them is a constructive placement of the incoming cars, so as to start demurrage

under a rule by which the defendant had agreed to be bound, as defendant was bound to stop further shipments or notify the carrier to deliver incoming cars elsewhere in the yards where they could be unloaded.  p. 312.

3. Under the carrier's rules, made a part of the agreement between the carrier and the consignee, the carrier could make a constructive placement by actually delivering the incoming cars at other points in defendant's yards instead of giving notice; but such option belonged to it and not to the consignee. p. 313.

APPEAL from a judgment of the circuit court for Eau Claire county: E. C. HIGBEE, Judge.  *Affirmed.*

Action for demurrage on thirty-three carloads of logs from defendant's camps to its mill, March 25 to 31, 1920.

The answer admitted that such cars were received at Eau Claire by plaintiff for delivery at defendant's mill yard in said city.  Alleged that during the same period an unprecedented flood existed in the Chippewa river adjacent to plaintiff's railroad track at the place where defendant usually unloaded its logs, so that the logs could not be dumped into its pond without being carried away.  That any delay on the part of the defendant in releasing said cars was caused by such flood and by the delay of the plaintiff in delivering.

It is undisputed that defendant has its own spur track with branches in its mill yard and connected with plaintiff's main line.  That by custom and defendant's standing order all prior carload log shipments had been spotted upon a portion of such tracks adjacent to defendant's pond and boom and there unloaded directly into the pond for movement to the mill.  That there was other space on such tracks from which unloading could be done on to the land, but requiring extra handling.  That by drum and cable defendant to some extent could move cars in its yard.  That during this flood, unusual in height and duration, defendant secured its boom by cables across and fastened to the rails at this unloading track and kept seven loaded cars thereon as anchorage until April 6th.  That the defendant did not expect to pay demur-

rage and did not anticipate at first that the flood would last so long and made no effort to withhold shipments from the camps.

Upon the arrival on the several days of these cars plaintiff gave prompt, respective, written notice thereof to defendant, saying:

"You are hereby notified that the following cars, consigned to or ordered to or by you, cannot be delivered on account of your act, neglect, or inability to receive, and tender of same is hereby made. These cars are subject to the demurrage rules published in the tariffs lawfully on file, and charges in accordance therewith will be made for detention beyond the free time therein provided."

By a so-called average agreement concerning car detentions, defendant promised compliance with the published rules. Among such are rule 3, section D, note 1, and rule 5, section A—1, the material parts of which appear in the decision.

On trial by the court he found that at no time did defendant notify plaintiff of willingness or ability to receive and unload cars at other places than the usual one in the yards; that defendant did not refuse to receive the cars at other points or notify plaintiff that it was unable to receive or unload.

Defendant appeals from the judgment for plaintiff.

*W. M. Bowe* of Chippewa Falls, for the appellant.

For the respondent the cause was submitted on the brief of *R. L. Kennedy* and *G. F. Dames,* both of St. Paul, and *Bundy, Beach & Holland* of Eau Claire.

ESCHWEILER, J. Defendant in substance contends that plaintiff ought not to recover because, when learning that loaded cars were occupying the portion of defendant's spur track upon which prior shipments had always been spotted for defendant's convenience in unloading, it did not place or offer to place the incoming cars upon other parts of de-

fendant's spur track where unloading would have been possible, though at greater inconvenience and expense to defendant. That without such tender or offer by plaintiff there was no default by defendant and therefore no fixing of a starting time from which, under the rules, demurrage became due.

Defendant, however, was promptly informed by the notice sent and quoted *supra* that plaintiff considered the use by defendant for anchoring purposes of the unloading track as inability on defendant's part to receive the new shipments. Such was certainly not an unreasonable view to take, and particularly so in view of the admission to that effect in the answer *supra*. Plainly the defendant was required to either stop shipments from its camps or notify plaintiff to deliver the cars somewhere else in its mill yard.

We consider this the reasonable interpretation to be given to rule 5, section A—1, which reads:

"When delivery of a car consigned or ordered to an industrial interchange track or to other than a public delivery track cannot be made on account of the inability of the consignee to receive it, or because of any other condition attributable to the consignee, such car will be held at its destination, or if it cannot be reasonably accommodated there, at the nearest available hold point, and written notice that the car is held and that the railroad is unable to deliver it will be sent or given to the consignee. This will be considered constructive placement."

What the plaintiff did was constructive placement under that rule requiring the notice, which was given, of such constructive placement to start demurrage.

Rule 3, section D, reads:

"On cars to be delivered on other than public delivery tracks, time will be computed from the first 7:00 a. m. after actual or constructive placement on such tracks. Note 1. Actual placement is made when a car is placed in an accessible position for loading or unloading or at a point previously designated by the consignor or consignee. If such

placing is prevented from any cause attributable to the consignor or consignee and car is placed on the private or other than public delivery track serving the consignor or consignee, it shall be considered constructively placed without notice."

Within its rights and its duties under this rule plaintiff might well have delivered these cars at other points in defendant's yard, as defendant claims it ought to have done. This would have dispensed with the necessity of giving other notice than that of actual delivery, making the constructive placement provided for in this rule.

The option, however, in such a situation was with the plaintiff rather than with the defendant, and plaintiff is entitled to recover.

*By the Court.*—Judgment affirmed.